UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID COLLINS                                               CIVIL ACTION

VERSUS                                                      No. 16-16627

CENAC MARINE SERVICES, LLC ET AL.                           SECTION I

## ORDER AND REASONS

Plaintiff David Collins ("Collins") alleges that he slipped and fell down a flight of stairs on a vessel owned by defendant Cenac Marine Services, LLC ("Cenac"). At the time, Cenac employed Collins.

Before the Court is Cenac's motion[1] for partial summary judgment on the grounds that Cenac does not owe maintenance and cure related to mental health conditions preexisting Collins' employment with Cenac. Collins opposes[2] the motion.

## I.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce

---

[1] R. Doc. No. 69-1.
[2] R. Doc. No. 81.

evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue of material fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* However, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Moreover, "[a]lthough the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 Moore's Federal Practice–Civil ¶ 56.91 (2017)). "This flexibility allows the court to

2

consider the evidence that would likely be admitted at trial . . . without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer v. Independence Town*, No. 16-30673, 2017 WL 3866561, at *3 (5th Cir. Sept. 5, 2017).

## II.

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Jauch v. Nautical Serv., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (per curiam) (paraphrasing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)). "The shipowner's obligation is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment." *McCorpen*, 396 F.2d at 548. Thus, "[a] seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed." *Jauch*, 470 F.3d at 212 (paraphrasing *McCorpen*, 396 F.2d at 548).

As the Fifth Circuit has explained, "[i]n cases involving pre-existing conditions, courts distinguish between nondisclosure and concealment." *Id.*

> If a vessel owner does not require a pre-employment medical examination or interview, a seaman must disclose his condition "when in [the seaman's] own opinion the shipowner would consider it a matter of importance." If, however, the vessel owner does require the seaman to submit to medical examination as part of its hiring process, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits.

*Id.* (quoting *McCorpen*, 396 F.2d at 548-49).

3

In order to establish the so-called *McCorpen* defense, a vessel owner must prove three elements: "(1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit." *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (Clement, J.).

### III.

Cenac asserts the *McCorpen* defense with respect to Collins' preexisting mental health issues. It argues that the facts material to the defense are undisputed and conclusively show that the defense applies in this case. Collins counters that a genuine dispute of material fact exists as to whether Cenac is entitled to the defense.

To resolve the dispute, the Court will address each prong of the *McCorpen* defense in turn.

### A.

*McCorpen*'s first prong—which concerns intentional concealment—"does not require a finding of subjective intent." *Brown*, 410 F.3d at 174 (internal quotation marks omitted). "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information . . . satisfies the intentional concealment requirement." *Id.* (internal quotation marks omitted);

In this case, the parties agree that Collins was under treatment for depression (*i.e.*, had been prescribed medication to treat depression) in October 2008.[3] The

---

[3] R. Doc. No. 69-20, ¶ 5; *see also* R. Doc. No. 81-9, ¶ 5; R. Doc. No. 69-12 (medical record dated October 23, 2008).

4

parties also agree that Collins sought treatment for a "panic attack" on October 30, 2010.[4] At the time, Collins reported that he was "anxious," and hospital staff noted that he was in a "depressed mood."[5] A physician record from early November 2010 indicates that Collins was suffering from panic attacks and depression, and "was going to therapist [sic]."[6]

The November 2010 physician record also indicates that Collins was prescribed Zoloft.[7] The Court takes judicial notice of the fact that Zoloft "is used to treat depression, anxiety, and other mood disorders."[8]

With respect to the circumstances under which Collins was hired by Cenac, the parties agree that, "[i]n April of 2014, when [Collins] applied to work at Cenac[,] he was required to undergo a pre-employment/post-offer physical examination."[9] Moreover, the parties agree that, "[a]s part of that process, [Collins] was required to fill out a medical questionnaire."[10]

The medical questionnaire—dated April 30, 2014—asked Collins a number of questions about his medical history, including: "Have you ever had or do now have

---

[4] R. Doc. No. 69-13, at 3 (medical record dated October 30, 2010); *see also* R. Doc. No. 69-20, ¶ 6; R. Doc. No. 81-9, ¶ 6.
[5] R. Doc. No. 69-13, at 6-7.
[6] R. Doc. No. 69-14; *see also* R. Doc. No. 69-20, ¶ 7; R. Doc. No. 81-9, ¶ 7 (denying paragraph 7 of Cenac's statement "because no citation is provided").
[7] R. Doc. No. 69-14.
[8] *See* U.S. Food and Drug Administration, Sertraline (Marketed as Zoloft) Information, https://www.fda.gov/Drugs/DrugSafety/ucm053351.htm.
[9] R. Doc. No. 69-20, ¶ 11; *see also* R. Doc. No. 81-9, ¶ 11.
[10] R. Doc. No. 69-20, ¶ 12; *see also* R. Doc. No. 81-9, ¶ 12; R. Doc. No. 69-16 (medical questionnaire).

[sic] . . . nervousness or mental illness[?]" and "Have you ever had or do now have [sic] . . . anxiety[?]"[11] It is not disputed that Collins answered "no" to both questions.[12]

The medical questionnaire was "clearly designed to elicit the [requested] medical information." *McNabb v. Bertucci Contracting Co.*, No. 12-1342, 2013 WL 1099156, at *5 (E.D. La. Mar. 15, 2013) (Morgan, J.). In response, Collins "failed to disclose this highly relevant information"—in fact, he appears to have disclosed false and misleading information. *Id.* As "intentional concealment is an objective inquiry," Cenac has satisfied *McCorpen*'s first prong for purposes of summary judgment. *Id.* (citing *Brown*, 410 F.3d at 175).

**B.**

With respect to *McCorpen*'s second prong, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. To establish this prong, Cenac offers the sworn affidavit of Andrew Soudelier ("Soudelier"), the Director of Human Resources for the Marine Division at Cenac.[13] Soudelier states under oath that "[e]ach of the questions of the Cenac-created questionnaire portion of every Cenac post-offer medical examination is material to Cenac's understanding

---

[11] R. Doc. No. 69-16, at 1.
[12] Id.; *see also* R. Doc. No. 69-20, ¶ 13; R. Doc. No. 81-9, ¶ 13. The parties agree also that Collins answered "no" to identical questions on a June 2015 questionnaire that he filled out as part of his annual Cenac Marine Services physical. *See* R. Doc. No. 69-20, ¶ 15; R. Doc. No. 81-9, ¶ 15 (denying paragraph 15 "to the extent that this fact is not material" to the *McCorpen* defense).
[13] *See* R. Doc. No. 69-18.

6

of whether a new crew member is fit for the position sought."[14]  Soudelier further states under oath that:

> Cenac was not aware of Mr. Collins' prior mental illnesses and/or conditions and Cenac would not have approved Mr. Collins for vessel service pushing red-flagged barges in the heavy labor position of a Pilot without further medical information regarding his prior mental illnesses and/or conditions and the appropriate clearance to return to work from his prior treating physicians.[15]

*Cf. Jauch*, 470 F.3d at 212-13 ("Jauch concealed numerous instances of back injury and mental health problems, disclosure of which would have either prevented his employment, or at least delayed it . . . ."). The Court concludes that Cenac has met its initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

Collins then has the burden of pointing out a genuine dispute of material fact for trial. *Matsushita*, 475 U.S. at 587. Collins correctly notes that, "[i]f the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure." *Jauch*, 470 F.3d at 212. In an attempt to fit himself into this exception, Collins states in a sworn affidavit that he "worked for a Cenac entity on at least three separate occasions" and that he "was hired by Andrew Soudeilier" during his "second stint, which began in 2002 and lasted until 2003 or 2004."[16] (The parties dispute whether

---

[14] *Id.* ¶ 11.
[15] *Id.* ¶ 14.
[16] R. Doc. No. 81-7, ¶¶ 4-5.

7

or not Collins has a pre-2014 employment history with Cenac.[17]) Collins further states that, "[d]uring this time working for Cenac, Andrew Soudeilier, among others, told me that I had an attitude problem and sent me to a doctor to get checked out."[18] He states that the doctor "issued [him] a prescription for the drug Depakote."[19] The Court takes judicial notice of the fact that Depakote is an "anti-epileptic drug" used to treat, among other things, "manic episodes associated with bipolar disorder."[20]

The Court concludes that Collins has failed to raise a genuine dispute of material fact for trial regarding the *McCorpen* defense's second prong. Assuming *arguendo* that a reasonable jury could conclude that Collins had a pre-2014 employment relationship with Cenac, and that Soudeilier's decade-old knowledge of Collins bore on Cenac's knowledge of Collins in 2014, Collins only states that Soudeilier believed that he had an "attitude problem" during his "second stint" with Cenac.[21] Collins points to no evidence that Soudeilier—or anyone else at any "Cenac entity"—knew that he had been prescribed Depakote.[22]

Further, Collins has provided no evidence that Soudeilier or anyone else associated with Cenac knew about Collins' documented history of nervousness, depression, and anxiety—the issues that Collins did not disclose to Cenac at the time

---

[17] *See* R. Doc. No. 69-20, ¶ 9; R. Doc. No. 81-9, ¶ 9.
[18] R. Doc. No. 81-7, ¶¶ 6.
[19] *Id.* ¶ 8.
[20] *See* U.S. Food and Drug Administration, Depakote (Divalproex Sodium) Tables for Oral Use: FDA Approved Labeling Text Dated October 7, 2011, https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/018723s037lbl.pdf
[21] R. Doc. No. 81-7, ¶¶ 5-6.
[22] *Id.* ¶ 4. Suffice it to say, Collins' statement that the employer paid for the doctor's visits is not equivalent to the employer knowing the results of those visits. *Id.* ¶ 7.

that he was hired in 2014. Cenac has satisfied *McCorpen*'s second prong for purposes of summary judgment.

## C.

Lastly, Cenac must show that "a connection exists between the withheld information and the injury complained of in the lawsuit" in order to establish the *McCorpen* defense. *Brown*, 410 F.3d at 171. As Judge Vance has explained:

> The "connection" inquiry does not turn on whether the plaintiff's misrepresentations caused his injuries in the normal sense. A successful *McCorpen* defendant need not submit any proof that the plaintiff's omission caused the injury. Rather, the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected *the same body part*.

*Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728 (E.D. La. 2009) (citing *Brown*, 410 F.3d at 176) (emphasis added).

In this case, both parties agree that Collins' "various pre-existing injuries to his mind and/or psyche affect the same area of his body that he claims he injured/re-aggravated while working for Cenac."[23] As such, Cenac has satisfied *McCorpen*'s third and final prong for purposes of summary judgment. Therefore, Collins may not recover maintenance and cure for mental health conditions preexisting Collins' employment with Cenac.

## III.

For the foregoing reasons,

---

[23] R. Doc. No. 69-20, ¶ 25; *see also* R. Doc. No. 81-9, ¶ 25 (Collins admitting same).

9

**IT IS ORDERED** that the motion is **GRANTED**, and that Collins' claim to maintenance and cure related to mental health conditions preexisting Collins' employment with Cenac is **DISMISSED**.

New Orleans, Louisiana, November 22, 2017.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**